**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

HYUNDAI MERCHANT MARINE CO. LTD., :

Plaintiff, :

v. : CA 1:12-00095-CG-C

GRAND CHINA SHIPPING (HONG KONG) CO., LTD.; HNA GROUP CO. LTD.; GRAND CHINA LOGISTICS HOLDINGS (GROUP) COMPANY LIMITED; GRAND CHINA SHIPPING (YANTAI) CO., LTD.; and OCEAN CONTAINER TRADING (HONG KONG) COMPANY, LTD., :

Defendants. :

**REPORT AND RECOMMENDATION**

Before the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2[1] is the motion to dismiss filed, on April 2, 2012, by defendants Grand China Shipping (Yantai) Co. Ltd. ("GCS Yantai") and Ocean Container Trading (Hong Kong) Company Limited ("Ocean Container") (collectively, the "Moving Defendants") (Doc. 21); the plaintiff's response (Doc. 23), filed April 17, 2012; and the Moving Defendants' reply (Doc. 36), filed April 24, 2012. After a careful review of the parties' pleadings and consideration of the arguments made at the hearing

---

[1] At its outset, this case was randomly assigned to the Magistrate Judge for all purposes (*see* Doc. 5), and briefing with respect to the motion was closed, on April 24, 2012 (*see* Doc. 22), before the case was reassigned to U.S. District Judge Callie V. S. Granade. The Magistrate Judge remains assigned to the case for pretrial purposes, and as such, this motion remains before the undersigned for entry of a report and recommendation to Judge Granade.

conducted on May 9, 2012, the undersigned **RECOMMENDS** that the motion be **GRANTED IN PART** and **DENIED IN PART**, as set out herein.

Relevant Background

In the verified complaint filed on February 15, 2012 (Doc. 1), the plaintiff alleges that defendant Grand China Shipping (Hong Kong) Co. Ltd. ("GCS Hong Kong") failed to pay the plaintiff more than $19 million in charter hire for the use of its vessel GLOBAL COMMANDER (*see id.*, ¶¶ 1-18) and sought

> an order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Admiralty Rules attaching, inter alia, any assets of GCS Hong Kong in the district and including any assets of GCS Hong Kong held by any garnishee in this district for purposes of obtaining personal jurisdiction over GCS Hong Kong and to secure its claim.

(*Id.*, ¶ 17.) The complaint next alleges that defendant HNA Group Co. Ltd. ("HNA") guaranteed GCS Hong Kong's obligations under the charter party. (*See id.*, ¶¶ 19-29.) And, as such, the plaintiff sought a similar maritime attachment against HNA. (*Id.*, ¶ 28.) Finally, the complaint alleges that the Moving Defendants are both alter egos of the other defendants (*id.*, ¶¶ 30-35) and that

> [i]t would be fair and equitable to pierce or reversely pierce the corporate veil of HNA, [defendant Grand China Logistics Holdings (Group) Company Limited ("GCS Logistics")], GCS Hong Kong, GCS Yantai[,] and Ocean [Container] in order to reach the economic value of the[] assets that they have compartmentalized in separate corporate pockets, to the detriment of [the plaintiff]

(*id.*, ¶ 36).

On March 15, 2012, the plaintiff filed an affidavit of service (Doc. 19), which provides that its counsel, Thomas S. Rue, Esq., served the summons (Doc. 18), verified complaint (Doc. 1), order authorizing issuance of process of maritime attachment and garnishment (Doc. 6), along with process of maritime attachment and garnishment (Docs. 7 & 8), supplemental process of attachment and garnishment (Docs. 14 & 15), and notice of lawsuit upon GCS Hong Kong, GCS Logistics, HNA, and the Moving Defendants

> [b]y sending a true copy of the above-listed in a secure parcel via Federal Express, directed to the above-mentioned parties at . . . addresses [in the People's Republic of China, including, for Ocean Container, in Hong Kong], upon information and belief, designated by the Defendants for the purpose of receiving proceeding papers, the place where Defendants then kept an office, and where there then was regular communication by mail.

(Doc. 19 at 2.) Mr. Rue further provided that on March 15, 2012, he "confirmed through the website of Federal Express that all courier parcels had been delivered" to the parties at the addresses provided in the affidavit of service. (*Id.*)

<u>Positions of the Parties</u>

The motion asserts two related—but, as will be explained more fully, distinct arguments. First, the Moving Defendants argues that the plaintiff's transmission of documents via Federal Express does not comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Service Convention" or the "Service Convention"), and, because service was defective, it should be quashed and the

plaintiff's claims against the Moving Defendants dismissed pursuant to Rules 12(b)(2) (lack of personal jurisdiction), 12(b)(4) (insufficient process), and 12(b)(5) (insufficient service of process). The Moving Defendants next contend that, to the extent the plaintiff is attempting to provide notice pursuant to Supplemental Admiralty Rule B(2),[2] such notice fails because the plaintiff did not comply with the Service Convention.

The plaintiff contends that service under the Federal Rules of Civil Procedure and notice pursuant to the Supplemental Admiralty Rules are distinguishable. Thus, to properly provide notice, there was no need to comply with the Hague Service Convention. Importantly, however—as the plaintiff has conceded—"[a]lthough attachment may issue against property held for the defendant[s] in the district up to the amount sued for, execution in proceedings commenced by maritime in personam attachments in which the defendant[s have] not been personally served or appeared

---

2 Supplemental Admiralty Rule B(2) provides that

> [n]o default judgment may be entered except upon proof—which may be by affidavit—that:
>
> (a) the complaint, summons, and process of attachment or garnishment have been served on the defendant in a manner authorized by Rule 4;
>
> (b) the plaintiff or the garnishee has mailed to the defendant the complaint, summons, and process of attachment or garnishment , using any form of mail requiring a return receipt; or
>
> (c) the plaintiff or the garnishee has tried diligently to give notice of the action to the defendant but could not do so.

*Id.*

cannot exceed the value of the attached property." *East Asiatic Co., Ltd. v. Indomar, Ltd.*, 422 F. Supp. 1335, 1341 (S.D.N.Y. 1976) (citations and internal quotation marks omitted).[3]

Discussion

**1. Personal jurisdiction**

At the outset of the hearing, counsel for the plaintiff conceded that, because the Moving Defendants were not served in accordance with the provisions of the Service Convention, the Court lacks personal jurisdiction over them. This is correct. But, as to Ocean Container, served in Hong Kong, the issue of whether service was proper is more complex.

a. GCS Yantai

Because GCS Yantai, served at an address in Shandong Province (*see* Doc. 19 at 2), was served in a manner contrary to the Service Convention, the Court lacks personal jurisdiction over it, *see, e.g., Ferrostaal, Inc. v. HACI HASSAN YARDIM*, No. 03 CV 4886(GBD), 2006 WL 2819585, at *1-2 (S.D.N.Y. Sept. 29, 2006) (dismissing claims against two Turkish residents served by mail because service of process by mail contravened the

[3] There, the court further explained that "[t]he same proposition is well established outside admiralty[,]" *id.* (citing, *e.g., Cooper v. Reynolds*, 77 U.S. 308, 318 (1870) ("[T]he judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached properly is exhausted. No suit can be maintained on such a judgment in the same court or in any other, nor can it be used as evidence in any other proceeding not affecting the attached property, nor could the costs in that proceeding be collected of defendant out of any other property than that attached in the suit.")).

Hague Service Convention—Turkey, like China, objected to Article 10(a) when it agreed to the Service Convention).

> When the validity of personal jurisdiction or service of process is challenged through a motion pursuant to [Rule] 12(b)(2) or 12(b)(5), the plaintiff bears the burden of proving that process was properly served. Valid service of process is an indispensable prerequisite to the assertion of personal jurisdiction over a defendant.
>
> Rule 4(f) of the Federal Rules of Civil Procedure governs service of process upon a foreign defendant. Service may be obtained "[b]y any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention," FED. R. CIV. P. 4(f)(1), or, "if the applicable international agreement allows other means of service [and] unless prohibited by the law of the foreign country," by "any form of mail requiring a signed receipt." FED. R. CIV. P. 4(f)(2)(C)(ii). Service pursuant to the Hague Convention is mandatory when serving a foreign defendant in a signatory country. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). The United States and [Turkey and China] are both signatories of the Hague Convention.
>
> Under the Hague Convention, each signatory country establishes a "Central Authority" which receives requests for service from other signatory countries and serves the document to the local defendant in accordance with local law or according to another requested method that is not inconsistent with local law. Hague Convention, arts. 2 & 5. *See also EOI Corp.*[ *v. Med. Mktg. Ltd.*], 172 F.R.D. [133,] 136 n. 5 (describing the process of making a service request to the Central Authority of defendant's country).
>
> > Article 10 of the Hague Convention permits alternatives to the Central Authority for service of process:
> >
> > Provided that the State of destination does not object, the present Convention shall not interfere with-
> >
> > (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, ...
>
> [Turkey and China], however, objected to Article 10(a) when the country acceded to the Hague Convention, making service "by postal channels" an invalid method to serve defendants in that country from abroad. . . .

> With service by mail under Article 10(a) having been rejected by [Turkey and China], this method of service is thus invalid for the defendants in this case. *See also Shenouda v. Mehanna*, 203 F.R.D. 166 (D.N.J.2001) (vacating default judgment and dismissing complaint against Egyptian resident because certified mail service contravened the Hague Convention). Thus, Plaintiff has not effected proper service of process on [the Turkish citizens].

*Id.* at *2 (some citations omitted and other alterations to original); *see also Intercontinental Indus. Corp. v. Luo*, No. CV 10-4174-JST (Ex), 2011 WL 221880, at *2 (C.D. Cal. Jan. 20, 2011). ("China has objected to service by postal channels under Article 10(a). Hague Convention, China Declaration Notification, ¶ 3, *available at* http://www.hcch.net/index_en.php?act=status.comment&csid=393&disp=resdn (declaring "to oppose the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention"). Courts have interpreted this to mean that "[s]ervice therefore cannot be effected by postal channels" in China. *In re LDK Solar Secs. Litig.*, No. C07-05182, 2008 WL 2415186, at *1 (N.D. Cal. June 12, 2008).").

b. Ocean Container

The Court lacks personal jurisdiction over Ocean Container, served at an address in Hong Kong, not necessarily because the plaintiff violated the Service Convention, but because the plaintiff has not carried its burden to show that process was properly served.[4]

---

[4] Put succinctly,

> "[o]nce the sufficiency of service is brought into question, the plaintiff has the burden [to prove] proper service of process." *Cornwall v. Miami–Dade County*

Although Hong Kong is a special administrative region of the People's Republic of China, there is no objection to service by mail in Hong Kong, pursuant to Article 10(a).[5] *See, e.g., TracFone Wireless, Inc. v. Bequator Corp., Ltd.*, 717 F. Supp. 2d 1307, 1309 (S.D. Fla. 2010) ("As indicated by the Court's review of Hong Kong's position with respect to particular articles of the Hague Service Convention, a copy of which was attached to the Motion, with respect to Article 10(a), Hong Kong has 'no objection.' The Court thus finds that Hong Kong **does not object** to judicial documents being sent by postal channels pursuant to Article 10(a).") (emphasis in original); *Willis v. Magic Power Co., Ltd.*, Civil Action No. 10-4275, 2011 WL 66017, at *3 (E.D. Pa. Jan. 7, 2011) ("Neither the People's Republic of China nor Hong Kong has objected under the Hague Service Convention to service of process by mail in Hong Kong."). However, because Hong Kong "does not object to judicial documents being sent by postal channels pursuant to

---

> *Corr. & Rehab. Dept.*, No. 10–23561–CIV, 2011 WL 3878352, at *2 (S.D. Fla. Aug. 31, 2011) (citing *Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1277 (S.D. Fla. 1999)). "If a plaintiff makes a *prima facie* showing of proper service, the burden shifts back to the defendant to bring strong and convincing evidence of insufficient process." *Hollander v. Wolf*, No. 09–80587–CIV, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009). "The Court may look to affidavits, depositions, and oral testimony to resolve disputed questions of fact." *Id.*

*Kennedy v. Grova*, No. 11–61354–CIV, 2012 WL 1368139, at *2 (S.D. Fla. Apr. 19, 2012).

[5] The Hague Service Convention was extended to Hong Kong by the United Kingdom, in 1970, prior to either the People's Republic of China acceding to the Service Convention, on January 1, 1992, or China becoming the sovereign of Hong Kong, on July 1, 1997. *See Willis v. Magic Power Co., Ltd.*, Civil Action No. 10-4275, 2011 WL 66017, at *2 (E.D. Pa. Jan. 7, 2011) (documenting the applicable history). In fact, "[o]n June 10, 1997, China notified the Netherlands government, the official depository for the Hague Convention, that upon transfer of Hong Kong's sovereignty to China, the Hague Service Convention would continue to be applicable to Hong Kong." *Id.* (citation omitted).

Article 10(a)," *Bequator Corp., Ltd.*, 717 F. Supp. 2d at 1309, does not mean that Article 10(a) authorizes service by mail; "instead, courts must look to Rule 4(f) for authorization[,]" *Julien v. Williams*, No. 8:10-cv-2358-T-24 TBM, 2010 WL 5174535, at *2 & n.5 (M.D. Fla. Dec. 15, 2010) (agreeing "with the court in *Brockmeyer*[ *v. May*, 383 F.3d 798, 803-04 (9th Cir. 2004),] that even if a contracting State does not object to Article 10(a), it neither authorizes nor forbids service of process by mail[,] and noting that "[o]ther courts have followed this approach and concluded that Article 10(a) does not authorize service by mail") (citing *The Knit With v. Knitting Fever, Inc.*, Civil Action Nos. 08-4221, 08-4775, 2010 WL 2788203, at *7-8 & *11 (E.D. Pa. July 13, 2010); *Ballard v. Tyco Int'l, Ltd.*, No. CIV.A.04-1336, 2005 WL 1863492, at * 4 (D.N.H. Aug. 4, 2005)).

Therefore, service sent to Hong Kong via Federal Express may be effective if (1) such service is sent by the Clerk, *see* FED. R. CIV. P. 4(f)(2)(C)(ii); or (2) such service, sent directly by the plaintiff, would be effective in Hong Kong "in an action in its courts of general jurisdiction[,]" *see* FED. R. CIV. P. 4(f)(2)(A).[6]

First, by directly sending the summons, complaint, and other documents to Ocean Container in Hong Kong, none of the documents were "addressed or sent by 'the clerk,' and thus Rule 4(f)(2)(C)(ii) does not apply." *J.B. Custom, Inc. v. Amadeo Rossi, S.A.*, No.

---

[6] Service on a corporation, partnership, or association not within any judicial district of the United States may be accomplished "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." FED. R. CIV. P. 4(h)(2). Further, given the procedural history of this matter, there is no need for the undersigned to address service via Rules 4(f)(2)(B) (letters rogatory or letters of request) or 4(f)(3) (other means, not prohibited, as allowed by court order).

1:10–cv–326, 2011 WL 2199704, at *2 (N.D. Ind. June 6, 2011) (citing *Intelsat Corp. v. Multivision TV LLC*, 736 F. Supp. 2d 1334, 1342 (S.D. Fla. 2010) (finding service improper under Rule 4(f)(2)(C)(ii) when plaintiffs "sent the documents directly without having the clerk address and send them as the Rule specifies"); *compare id.*, *with TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, ___ F. Supp. 2d ____, 2012 WL 539945, at *3-4 (S.D. Fla. Feb. 6, 2012) ("TracFone's service of the Summons and Amended Complaint on Defendants sent [by the Clerk of Court] via international express mail and via FedEx directed to their President, General Manager, or other executive officer at their respective headquarters, was sufficient, pursuant to [Rule] 4(f)(2)(c)(ii).").

Next, as to Rule 4(f)(2)(A), the plaintiff has not proved, *see Cornwall*, 2011 WL 3878352, at *2 ("Once the sufficiency of service is brought into question, the plaintiff has the burden [to prove] proper service of process."), that its sending of the documents via Federal Express to Ocean Container at the address provided in Mr. Rue's affidavit (Doc. 19 at 2) would be effective in Hong Kong "in an action in its courts of general jurisdiction[,]" FED. R. CIV. P. 4(f)(2)(A). Such service may be effective,[7] but while the

[7] For example, an unpublished decisions handed down in 1995 by the Southern District of New York, in which the court denied a motion to dismiss made pursuant to Rules 12(b)(4) and 12(b)(5), may be helpful to the plaintiff:

> Under subdivision (f)(2)(A), service may be effected in a manner prescribed by the law of the foreign country in an action in any of its courts of general jurisdiction. Under Hong Kong law, service by mail is permitted. *See* Laws of Hong Kong, District Court Ordinance, Chapter 336, § 20(1) ("Subject to the provisions of these rules and to the provisions of any other enactment the plaintiff or his agent shall serve a copy of the writ on each defendant . . . such service to be effected . . . (b) by sending them by ordinary post to the defendant at his usual or

undersigned is comfortable navigating through the application, by courts in this country, of the Hague Service Convention through Rule 4(f), he has no expertise in the internal laws of Hong Kong, and the parties have provided no guidance, much less any evidence, to assist the Court.

**2. Maritime attachment**

The other, probably more pertinent, issue before this Court is whether the Hague Service Convention impacts, in any way, maritime attachment pursuant to Supplemental Rule B. In the motion to dismiss and on reply, the Moving Defendants argue that the plaintiff has failed to provide proper Rule B notice because the Service Convention governs in all cases, in civil or commercial matters in which judicial or extrajudicial documents are transmitted for service, which, they contend "is precisely the situation here—plaintiff is seeking to 'transmit' documents to defendants GCS Yantai and Ocean Container in China in connection with its admiralty complaint. Pursuant to the Convention, this transmission must be through the Central Authority of

---

> last known address."); Laws of Hong Kong, Supreme Court Ordinance, Chapter 4, § 1(2) ("A writ for service on a defendant within the jurisdiction may . . . be served . . . (a) by sending a copy of the writ by ordinary post to the defendant at his usual or last known address . . .").

*New Line Int'l Releasing, Inc. v. Marty Toys (USA), Inc.*, 91 CIV. 8638(JFK), 1995 WL 347381, at *2-3 (S.D.N.Y. June 8, 1995).

Without briefing from the parties on this issue or, more preferably, affidavits from a lawyer admitted to practice in Hong Kong, the undersigned simply cannot rely on this almost-seventeen-year-old decision's discussion of Hong Kong's then-applicable law, and say that the plaintiff has discharged its burden to prove proper service of process under Rule 4(f)(2)(A).

China. Transmission by mail is simply not permitted." (Doc. 21 at 7 (citations omitted); *see also* Doc. 36 at 5 ("[A]ll courts agree that 'send[ing]' [as used in Article 10(a) and rejected by the People's Republic of China] is transmission by mail. Therefore, 'send' plainly encompasses the mailing of judicial documents for purposes of Rule B notice. China has objected to transmission by mail, so such transmission must be through the procedures specified in the Convention.").

Putting aside the above discussion regarding service by postal channels in Hong Kong, the Moving Defendants have failed to provide a case to directly support their argument—that "send" in the Hague Convention somehow modifies the rules of maritime attachment—and they, moreover, ignore cases that stand for the proposition that the remedy afforded by maritime attachment pursuant to Supplemental Rule B is **not limited by the requirements of Rule 4(f)**. *See, e.g., Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119, 124 (S.D.N.Y. 1979) (explaining that the Second Circuit, in *Chilean Line, Inc. v. United States*, 344 F.2d 757 (2d Cir. 1965), "reviewing the preliminary draft of the proposed amendments to the Rules of Civil Procedure, speculated in dictum that application of Federal Rule 4(f), enabling process to be served throughout the state, **might be held in the future to narrow the availability of the maritime attachment**. However, the drafters did not adopt such a rule in the final draft of Admiralty Rule B. The Advisory Committee's Note of 1966 to Supplemental Rule B explicitly states the Advisory Committee's conclusion, after considering such a change in Rule B, that **the maritime attachment remedy should not**

**be limited by the provisions of Rule 4(f)**. Courts in this district have since followed the drafters' intent and Professor Moore agrees with this result.") (citations omitted and emphasis added); *Amber Int'l Nav., Inc. v. Repinter Int'l Shipping Co., S.A.*, No. 09 Civ. 3897(GEL), 2009 WL 1883251, at *7 (S.D.N.Y. June 30, 2009) ("Moreover, the text of Rule B is silent as to service of process. Supplemental Rule A(2) makes the main body of the Federal Rules of Civil Procedure applicable to admiralty proceedings "except to the extent they are inconsistent with these Supplemental Rules." Just as *Chilean Line* and *D/S A/S Flint* found no inconsistency between the former Rule 4(f) and Admiralty Rule 2, there is no inconsistency between the ordinary rules governing service of process, provided by Rule 4, and Rule B. What's more, the rulemakers clearly knew how to impose more restrictive service rules in the admiralty domain, as they did through Supplemental Rule E(3)(a)[.]")

This Court has recognized, moreover, that it is not unusual for a court to initially establish jurisdiction over a defendant's property "pursuant to a Rule B Attachment[,]" and for a plaintiff to "later perfect[] personal service upon [the defendant] pursuant to Rule 4(f)" and the Hague Service Convention. *Servicio Marina Superior, LLC v. Matrix Int'l Ltd.*, Civil Action No. 07-0770-KD-C, 2009 WL 734114, at *6 (S.D. Ala. Mar. 17, 2009); *cf. id.* at *7 ("Attachment under Rule B serves to secure the defendant's appearance and assure satisfaction in the event the plaintiff's suit is successful. If the defendant is not present in the district at the time the suit is filed and cannot be found for service of process, Rule B attachment will secure jurisdiction. The later appearance of the

defendant will not dissolve the attachment.") (quoting *Gulf Marine & Indus. Supplies, Inc. v. New Filipino Maritime Agencies, Inc.*, No. CIV.A. 01–0555, 2001 WL 277924, *3 (E.D. La. Mar. 20, 2001) (internal citation omitted)).

Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that the motion (Doc. 21) be **GRANTED** to the extent that this Court lacks personal jurisdiction over the Moving Defendants—because they have challenged the sufficiency of service of process, "an indispensable prerequisite to the assertion of personal jurisdiction over a defendant[,]" *Ferrostaal*, 2006 WL 2819585, at *2, and the plaintiff has not proved that service was proper as to them—and be **DENIED** to the extent that the motion asserts that the remedy afforded by maritime attachment pursuant to Supplemental Rule B is limited by the requirements of Rule 4(f) and the Hague Service Convention.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 15th day of May, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1. *Objection*. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[8] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded)*. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[8] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P. 72(b)(2).