IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HYUNDAI MERCHANT MARINE CO. LTD, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 12-0095-CG-C ) |
| GRAND CHINA SHIPPING (HONG KONG) CO. LTD.; HNA GROUP CO. LTD.; GRAND CHINA LOGISTICS HOLDINGS (GROUP) COMPANY LIMITED; GRAND CHINA SHIPPING (YANTAI) CO. LTD.; AND OCEAN CONTAINER TRADING (HONG KONG) COMPANY LIMITED | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the report and recommendation of the Magistrate Judge (Doc. 48), Defendants'[1] objection to the report and recommendation (Doc. 52), and Plaintiff's Brief in Opposition (Doc. 53). The Magistrate Judge recommended that that Defendants' motion to dismiss (Doc. 21) be granted in part and denied in part. Specifically, the Magistrate Judge determined that this Court lacks personal jurisdiction over Defendants, but denied the motion to the extent it asserted that maritime attachment pursuant to Supplemental Rule B was not accomplished. Defendants do not dispute the validity

---

[1] As used herein, the term "Defendants" refers solely to Grand China Shipping (Yantai) Co. Ltd. and Ocean Container Trading (Hong Kong) Company Limited.

1

of the attachment, but object that the Magistrate did not rule on whether Plaintiff provided them with legally sufficient notice thereof.

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a de novo determination of those portions of the report and recommendation to which objection is made, the report and recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) is **ADOPTED** as the opinion of this Court, subject to the following additional discussion.

## DISCUSSION

Defendants argue that Plaintiff failed to provide proper notice of maritime attachment and garnishment when Plaintiff sent certain documents to them in China by Federal Express rather than according to the procedures prescribed by the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Hague Service Convention" or "the Convention"). (See Doc. 21 at 7; Doc. 52 at 4-8). Because "compliance with the Convention is mandatory in all cases to which it applies," Volkswagenwerk Aktiengesellshaft v. Schlunk, 486 U.S. 694, 705 (1988), the Court must first determine what procedures — those allowed by the Convention or those set forth in Supplemental Rule B(2) — apply when a defendant is to receive notice of maritime attachment abroad. This appears to be an issue of first impression.

Defendants argue that, because they are Chinese corporations in the People's Republic of China, Articles 1 and 10(a) of the Convention trump Rule B. Article 1 declares that the Convention "shall apply in all cases, in civil or commercial

matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Article 10(a) provides that, as long as the "State of destination" does not object, the Convention "shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad." The People's Republic of China has objected to Article 10. See Hague Convention, China Declaration Notification, ¶ 3, available at http://www.hcch.net/index_en.php?act=status.comment&csid=393&disp=resdn (declaring "to oppose the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention").

In an effort to extend the Convention's application beyond service of process, Defendants focus on the use of the words "transmit" and "send" in Articles 1 and 10, respectively. They argue that Plaintiff's notice via Federal Express was the "transmission" of a "judicial document," triggering Article 1 and rendering adherence to the Hague Service Convention's procedures mandatory. (Doc. 52 at 5). Defendants further argue that because China has explicitly rejected service by mail, Article 10 prohibits Plaintiff from "sending" notice via channels like Federal Express. (Doc. 21 at 5) Employing the doctrine of *noscitur a sociis*, Defendants maintain that Article 10's use of "send" is not synonymous with "service," but more broadly refers to the mailing of judicial documents. (Doc. 36 at 5; Doc. 52 at 5). As discussed in greater detail below, Defendants' arguments are unpersuasive and unavailing.

I.   Article 1

In Volkswagenwerk, the Supreme Court demarcated the scope and reach of the Convention, maintaining that it applies only to instances of formal service. Relying heavily on the Convention's drafting history, and upon review of the record of the Convention's negotiations, the Court determined that "Article 1 refers to service of process in the technical sense."[2]  486 U.S. at 700.  That conclusion is further supported by guidance from the Hague Conference itself.  See Permanent Bureau of the Hague Conference on Private International Law, Practical Handbook on the Operation of the Hague Convention of 15 November 1965 On the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters 23 (3d ed. 2006) [hereinafter Practical Handbook] ("[T]he term 'service' has a well-established technical meaning and refers to a formal delivery of documents that is

---

[2]   The Supreme Court's account of the relevant history is illuminating:

> The committee that prepared the preliminary draft deliberately used a form of the term "notification" (formal notice), instead of the more neutral term "remise" (delivery), when it drafted Article 1.  Then, in the course of the debates, the negotiators made the language even more exact.  The preliminary draft of Article 1 said that the present Convention shall apply in all cases in which there are grounds to transmit or to give formal notice of a judicial or extrajudicial document in a civil or commercial matter to a person staying abroad.  To be more precise, the delegates decided to add a form of the juridical term "signification" (service), which has a narrower meaning than "notification" in some countries, such as France, and the identical meaning in others, such as the United States.  The delegates also criticized the language of the preliminary draft because it suggested that the Convention could apply to transmissions abroad that do not culminate in service.  The final text of Article 1 . . . eliminates this possibility and applies only to documents transmitted for service abroad.  The final report (*Rapport Explicatif*) confirms that the Convention does not use more general terms, such as delivery or transmission, to define its scope because it applies only when there is both transmission of a document from the requesting state to the receiving state, and service upon the person for whom it is intended.

Id. at 700-01 (internal citations omitted).

4

legally sufficient to charge the defendant with notice of a pending action. It is in this technical sense that the expression is being used in the Convention. . . . [I]f the law of the forum states that a notice is to be somehow directed to one or several addressee(s), without requiring <u>service</u>, the Convention does not have to be applied." (emphasis in original)).[3]

Here, Plaintiff sought an attachment under Supplemental Rule B, and the Magistrate Judge ordered issuance of process. (Docs. 6-8). Plaintiff then mailed the summons, complaint and related documents to Defendants in China via Federal Express. (Doc. 21 at 2). If a return receipt was requested, Plaintiff may have complied with the notice procedures of Supplemental Rule B(2)(b).[4] But notice is not service. <u>E. Asiatic Co. v. Indomar, Ltd.</u>, 422 F. Supp. 1335, 1339-41 (S.D.N.Y. 1976) ("[C]ompliance with Supplemental Rule B does not constitute service of process under Rule 4. . . . [Supplemental Rule B(2)] notice bears no significance with

---

[3] The Handbook serves a dual objective: "(i) to provide both practical and direct answers to the most basic questions raised in the day-to-day application of the Convention, and (ii) to offer more detailed commentaries on specific issues raised by the Convention over the years." Christophe Bernasconi & Hans van Loon, <u>Foreword</u> to <u>Practical Handbook</u>, at III.

[4] In their briefs, Plaintiff places special emphasis on the means of notice articulated by Supplemental Rule B(2)(b): use of "any form of mail requiring a return receipt". (Doc. 23 at 3; Doc. 53 at 6). The record before the Court is unclear as to whether Plaintiff sent its Federal Express package to Defendant with a return receipt requested. <u>See</u> Doc. 19 (averring that Plaintiff's counsel "confirmed through the website of Federal Express that all courier parcels had been delivered" but stating nothing as to whether he demanded any proof of receipt). However, the issue of whether Plaintiff complied with Rule B's notification procedures is separate and apart from the narrow question presented by Defendants' objection, namely whether the Convention must be followed when a plaintiff seeks to notify a defendant abroad of a maritime attachment. Furthermore, sufficiency of notice is a matter that need not be explored unless and until Plaintiff seeks a default judgment against Defendants. <u>See</u> Supp. R. B advisory committee's note ("[N]otice by mail is not routinely required in all cases, but only in those in which the defendant has not appeared prior to the time when a default judgment is demanded. The rule therefore provides only that no default judgment shall be entered except upon proof of notice, or of inability to give notice despite diligent efforts to do so.").

respect to service of process under Rule 4."). With this in mind, and given that the Hague Service Convention governs formal service only, the Court concludes that the Convention does not preempt Supplemental Rule B. Therefore, Plaintiff's Federal Express mailing, though insufficient to effectuate service upon Defendants as required for this Court to exercise personal jurisdiction, may have legally notified Defendants of the attachment and garnishment.

## II.    Article 10(a)

Defendants also argue that Article 10(a), which permits a party "to send judicial documents" by mail so long as the "State of destination" does not object, prevents Plaintiff from mailing notice of maritime attachment. To date, the Supreme Court has yet to interpret Article 10(a), and there is a clear split among the circuits as to whether the use of "send" as used therein refers only to formal service of process. On one side of the split are the Ninth and Second Circuits, which relied on the intent of the drafters to conclude that "send" in Article 10(a) was intended to mean "service." See Brockmeyer v. May, 383 F.3d 798, 802-03 (9th Cir. 2004); Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir. 1986). The Fifth and Eighth Circuits' textualist approach assigns great significance to the use of "send" rather than "serve" to conclude that Article 10(a) does not contemplate service through postal channels. Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 384 (5th Cir. 2002); Bankston v. Toyota Motor Corp., 889 F.2d 172, 173-74 (8th Cir. 1989). Federal district and state courts are similarly divided. See Practical Handbook at 76-77 nn.270-71 (listing cases).

The Eleventh Circuit has yet to enter the fray. And having already determined that the Convention only applies to service of process, this Court need not take a side. Nonetheless, the Court finds that the Fifth and Eighth Circuits' analysis of Article 10(a) is unpersuasive for several reasons. Though the Fifth and Eighth Circuits both recognized that a treaty's plain language is conclusive absent a clearly expressed legislative intent, Nuovo Pignone, 310 F.3d at 384; Bankston, 889 F.2d at 174 (citing Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)), neither court gave any weight to that intent. Neither circuit even acknowledged the Volkswagenwerk Court's thorough analysis of the Convention's drafting history.[5] Furthermore, both decisions predate The Hague's explicit reaffirmance of "its clear understanding that the term 'send' in Article 10(a) is to be understood as meaning 'service' through postal channels." See Permanent Bureau of The Hague, Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions ¶ 55 (2003). Additionally, the State Department has repudiated Bankston. See U.S. Dep't of State Opinion Regarding the Bankston Case and Service by Mail to Japan Under the Hague Convention, 30 I.L.M. 260

---

[5] The Supreme Court undertook the task of translating the Convention's negotiating history (3 Conférence de la Haye de Droit International Privé, Actes et Documents de la Dixième Session (1964) - Notification (1965)), which has only been published in French. See HCCH Publications, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act =publications.details&pid=3390 (last visited June 21, 2012) ("The *Actes et documents* (Proceedings) of the First (1893) to the Tenth (1964) Sessions are only published in French.").

(1991).[6]  Foreign courts also agree that Article 10(a)'s "send" means "serve" in the formal sense.  See Brockmeyer, 383 F.3d at 802 (listing cases).

## Conclusion

To extent that the Magistrate Judge's report and recommendation failed to state explicitly that the Hague Service Convention does not dictate the means by which a defendant abroad is to receive notice of a maritime attachment, the Court hereby does so.  The Convention applies when a document is transmitted abroad for service; it does not govern the manner by which a defendant abroad must be notified of a maritime attachment.  By mailing the summons, complaint and related documents to Defendants in China via Federal Express, Plaintiff failed to effect service of process or establish personal jurisdiction, but it may well have satisfied Rule B(2)'s notice requirement if a return receipt was requested.

**DONE and ORDERED** this 6th day of July, 2012.

/s/  Callie V. S. Granade  
UNITED STATES DISTRICT JUDGE

---

[6]  The Supreme Court has instructed that "[w]hile courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight." Kolovrat v. Oregon, 366 U.S. 187, 194 (1961).